IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM

| | |
|---|---|
| IN RE: ) | |
| ) | |
| VALARIE MAE GOINES, ) | Case No. 07-50812 |
| ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |

**MEMORANDUM OPINION DENYING MOTION TO**
**CONVERT CASE FROM CHAPTER 7 TO CHAPTER 13**

This matter came before the Court for hearing on October 17, 2007, after sufficient and proper notice, on the Motion to Convert Chapter 7 Case to Chapter 13 (the "Conversion Motion"), filed by the above-referenced debtor (the "Debtor") on September 24, 2007. At the hearing, Edwin H. Ferguson appeared in his capacity as Chapter 7 Trustee (the "Trustee"), Michael D. West appeared in his capacity as the Bankruptcy Administrator, and A. Carl Penney appeared on behalf of the Debtor. Based upon a review of the Conversion Motion, the evidence and arguments presented at the hearing, and a review of the entire official record, the Conversion Motion will be denied.

**I. JURISDICTION**

The Court has jurisdiction over this subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. §157(b).

## II. FACTS

On May 29, 2007, the Debtor filed for Chapter 7 protection. Jeffrey P. Farran served as counsel for the Debtor.[1] The Debtor's original Schedules I and J showed that she had monthly net income of $3,321.00 and monthly expenses of $3,204.00, leaving net income of only $117.00. Schedule A described the Debtor's interest in real property located at 644 Nottinghill Drive, Winston-Salem, North Carolina (the "Property")[2] as a "tenant in common with 2 brothers (1/3 interest)." On June 22, 2007, the Debtor's Section 341 meeting was held, and the Debtor testified that she owned the Property jointly with her brothers for several years. The Debtor was also asked if she had transferred any property within the previous two years, and she replied in the negative. The Section 341 meeting was continued to July 6, 2007.

Prior to the continued Section 341 meeting, the Debtor produced a copy of a deed concerning the Property, which disclosed that the Property had been transferred on April 5, 2007, from the Debtor's sole ownership to joint ownership with her two brothers. At the continued Section 341 meeting on July 6, 2007, the Debtor admitted that she transferred the Property to herself and her two brothers just 54 days before she filed her Chapter 7 petition.

Based on these facts, on July 9, 2007, the Trustee filed an adversary proceeding (AP No. 07-06035) objecting to the discharge of the Debtor pursuant to Section 727(a) of the Bankruptcy Code (the "Discharge Adversary Proceeding"). Nine days later, on July 18, 2007, the Trustee

---

[1]On July 16, 2007, Farran filed a motion requesting Court authority to withdraw as the Debtor's counsel, which was granted on August 21, 2007. On September 24, 2007, the Debtor filed a motion to employ A. Carl Penny as counsel for the Debtor, which was granted the following day.

[2]The Property has been the Debtor's home for the past sixteen years.

filed another adversary proceeding (AP No. 07-06038), seeking recovery of the Property as a fraudulent conveyance pursuant to Section 548 of the Bankruptcy Code (the "Fraudulent Conveyance Adversary Proceeding").

The Debtor did not respond to the complaint in the Discharge Adversary Proceeding, and on August 22, 2007, the Trustee filed a motion for entry of default. The next day, an entry of default was entered. On September 17, 2007, the Trustee filed a motion for default judgment.

The Debtor did not respond to the complaint in the Fraudulent Conveyance Adversary Proceeding, and on August 23, 2007, the Trustee filed a motion for entry of default. The next day, an entry of default was entered. On September 17, 2007, the Trustee filed a motion for default judgment. On September 18, 2007, the Debtor filed an answer to the complaint.

On September 24, 2007, the Debtor filed the Conversion Motion and certain amendments to schedules I and J. The amended schedules show that the Debtor had an increase in net income of $964.00 per month. On October 9, 2007, the Trustee objected to the Conversion Motion.

## II. DISCUSSION

### A. The Statute

The Debtor in this case would like to convert her Chapter 7 case to a case under Chapter 13 pursuant to Section 706 of the Bankruptcy Code. The pertinent portions of Section 706 provide:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

3

11 U.S.C. § 706.

The statutory language "at any time" appears to confer an absolute right to convert so long as the case was not previously converted to a Chapter 11, 12, or 13 case. The Debtor's case has not previously been converted. Prior to the Supreme Court's 2007 ruling in <u>Marrama v. Citizens Bank of Massachusetts</u>, 127 S. Ct. 1105, 1110 (2007), several courts of appeals were split as to whether the right to convert was absolute for all debtors. Some circuits, including the Fourth Circuit, held that only the most egregious circumstances could justify denial of what is otherwise a clear statutory right. <u>In re Cooper</u>, 426 F. 3d 810, 814 (6th Cir. 2005)(disallowing Chapter 7 debtor conversion due to bad faith); <u>Finney v. Smith (In re Finney)</u>, 992 F.2d 43, 44-45 (4th Cir. 1993)("[C]ongress intended § 706(a) to confer 'the one-time absolute right' to convert from liquidation to reorganization, because 'the debtor should always be given the opportunity to repay his debts.'"); <u>Kuntz v. Shambam (In re Kuntz)</u>, 233 B.R. 580, 585 (1st Cir. BAP 1999) (debtor's one-time right to conversion may be denied in "extreme circumstances" constituting bad faith). Other circuits allowed conversion in spite of the debtor's bad faith conduct. <u>In the Matter of Martin</u>, 880 F. 2d 857, 859 (5th Cir. 1989)(conversion allowed after debtor received Chapter 7 discharge and the debtor engaged in pre-petition bad-faith conduct); <u>In re Croston</u>, 313 B.R. 447, 451 (9th Cir. BAP 2004)(debtor may convert if the statutory prerequisites are met, regardless of a debtor's bad faith); <u>Miller v. U.S. Trustee (In re Miller)</u>, 303 B.R. 471, 473 (10th Cir. BAP 2003) (debtor had absolute right to convert even though there was substantial evidence of abuse of the system); <u>In re Street</u>, 55 B.R. 763, 765 (9th Cir. BAP 1985)(conversion must be allowed if not previously converted, even if debtor received judgment of nondischargeability in Chapter 7 case).

In 2007, the Supreme Court, in a 5 to 4 decision, abrogated the <u>Martin</u>, <u>Croston</u>, and

Miller decisions by holding that a Chapter 7 debtor forfeited her right to convert to Chapter 13 by engaging in pre-petition bad faith conduct. Marrama, 127 S. Ct. at 1110. The bad faith conduct by the debtor established "cause" that would have warranted dismissal or reconversion of her Chapter 13 case, rendering her unqualified to be a debtor under Chapter 13. Id. Such a result is consistent with the Supreme Court's view that the purpose of bankruptcy law is to give "the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort." Local Loan Co. V. Hunt, 292 U.S. 234, 244 (1934); see Grogan v. Garner, 498 U.S. 279, 287 (1991).

**B. The Determination of Bad Faith**

Marrama does not define "bad-faith conduct" but merely notes that the conduct of the debtor must be "atypical" and limited to "extraordinary cases."[3] So how should a court determine bad faith in this context? There are two standards from which to choose: a plain meaning approach or an absence of good faith approach. Under the plain meaning approach, the common meaning of the term "bad faith" is used. See In re Computer Dynamics, Inc., 252 B.R. 50 (Bankr. E.D. Va. 1997)("bad faith" under F.R.B.P. 9011 has a plain meaning). The term "bad faith" is defined as "dishonesty of belief or purpose." Black's Law Dictionary 145 (8th ed. 2004).[4] Therefore a debtor who is dishonest in belief or purpose loses her absolute right to

---

[3]"We have no occasion here to articulate with precision what conduct qualifies as `bad faith' sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7. It suffices to emphasize that the debtor's conduct must, in fact, be atypical. Limiting dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation." Marrama, 127. S. Ct. at 1112 n.11.

[4]Previous editions of Black's Law Dictionary expressed an older definition of "bad faith," meaning an absence of good faith. Black's Law Dictionary 127 (5th ed. 1979). This helps to

convert from a Chapter 7 case to a Chapter 13 case.[5]

Alternatively, a court could use a different standard, that of an absence of good faith. Many courts, pre-Marrama, wrestled with what constituted actions sufficient to surrender the right to convert.  Post-Marrama, the Bankruptcy Court for the Eastern District of Pennsylvania used an absence of good faith approach by applying a "totality of circumstances" test that courts in the Third Circuit created and applied pre-Marrama to determine whether a motion to convert has been filed in good faith.  In re Piccoli, No. 06-2142, slip op. at *6-7 (E.D. Pa. Sept. 27, 2007)(2007 WL 2822001)(citing In re Pakuris, 262 B.R. 330, 335-36 (Bankr. E.D. Pa. 2001)); see also In re Murray, No. 07-10101, slip op. at *4 (Bankr. D. Del. October 24, 2007).  In evaluating the totality of the circumstances, the Piccoli court considered whether (1) the motion was filed in good faith, (2) the Chapter 13 plan was confirmable, (3) there was unfair prejudice to creditors (4) conversion was efficient in administration, and (5) conversion would further an abuse of the bankruptcy process.  Id. at *7.

This Court concludes that the plain meaning approach better follows the Marrama

---

explain why pre-Marrama cases used a lack of good faith approach to define bad faith.

[5]Bad faith certainly may be shown by acts of dishonesty, but it may also be shown in other ways.  See In re Wampler, 302 B.R. 601, 605-606 (Bankr. S.D. Ind. 2003)(denying a motion to convert based on bad faith where the debtor filed the motion for an illegitimate purpose); In re Sully, 223 B.R. 582, 585 (Bankr. M.D. Fla. 1998)(finding bad faith in the filing of a motion to convert where debtor's intent in converting the case was not to reorganize, but to frustrate the bankruptcy process and regain control of settlement proceeds to the detriment of creditors); In re Lesniak, 208 B.R. 902, 906 (Bankr. N.D. Ill. 1997)(denying motion to convert based on bad faith where filing of motion was not motivated by desire to repay debts or provide greater dividend to creditors, but to save debtors' property).  Because good faith is an "amorphous notion," it is impossible to identify the "infinite variety of factors" that might weigh in the "good faith equation."  In re Condon, 358 B.R. 317, 326 (6th Cir. BAP 2007)(quoting Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah), 836 F.2d 1030, 1033 (6th Cir.1988)).

decision. The plain meaning approach is more suited to protecting the rights and interests of the "honest debtor." The absence of good faith approach makes a determination based in part on feasability, efficiency, and the best interests of creditors.[6] These determinations are not at the heart of the doctrine. Moreover, the plain meaning approach protects the honest debtor by requiring a showing of dishonesty by the objecting party, rather than a showing of honesty by the debtor.

## C.  The Burden of Proof

Marrama did not address which party has the burden of persuasion in determining whether the debtor's conduct evidences sufficient bad faith to deny a motion to convert her case to Chapter 13. However, any ambiguities should be generally resolved in favor of the debtor, New Neighborhoods, Inc. West Virginia Workers' Compensation Fund, 886 F.2d 714, 719 (4th Cir. 1989), which supports the conclusion that the objecting party has the burden of proof. Placing the burden of proof on the objecting party, not the debtor, is also consistent with the plain meaning approach discussed above.[7]

---

[6]Language in Marrama controverts the use of this test. "There is an argument that the standards for good faith in a motion to convert under 11 U.S.C. § 706(a) should be the same as the standards for good faith in an initial Chapter 13 petition." Marrama, 127 S. Ct. at 1109 (citing In re Marrama, 430 F. 3d 474, 479 (1st Cir. 2005)("We can discern neither a theoretical nor a practical reason that Congress would have chosen to treat a first-time motion to convert a chapter 7 case to chapter 13 under subsection 706(a) differently from the filing of a chapter 13 petition in the first instance."). The key phrase here is "initial Chapter 13 petition." Issues of feasibility, efficiency, and the best interests of creditors are raised after the petition, usually at the Section 341 meeting and the Section 1325 plan confirmation hearing.

[7]The "honest" debtor has an absolute right to convert. Putting the burden of proof on the objecting party requires that party to demonstrate the debtor's dishonesty and avoids putting the debtor in the untenable position of having to prove a negative, i.e., that she was not dishonest.

**D. The Standard of Proof**

Marrama did not address the proper standard of proof to be applied. What standard must the objecting party meet? "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" Addington v. Texas, 441 U.S. 418, 423 (1979)(quoting In re Winship, 397 U.S. 358, 370 (1970)). There are two standards of proof that are applicable to bankruptcy proceedings: clear and convincing, and preponderance of the evidence.

The preponderance of the evidence standard is applicable in civil actions, unless important individual interests are at stake, and then a clear and convincing standard is required. Grogan v. Garner, 498 U.S. 279, 286 (1991). The preponderance of the evidence standard is generally applied where there is a monetary dispute between private parties, where society has a minimal concern with the outcome. Addington, 441 U.S. at 423. Therefore, litigants "share the risk of error in roughly equal fashion." Id. In bankruptcy proceedings, for example, the preponderance of the evidence standard is used in cases that determine whether debts will be excepted from the debtor's discharge pursuant to Section 523(a). Grogan, 498 U.S. at 286.

A clear and convincing standard applies in cases where the interests at stake "are deemed to be more substantial than mere loss of money." In re Mark, 336 B.R. 260, 265 (Bankr. D. Md. 2006)(quoting Addington, 441 U.S. at 423-24). A clear and convincing evidence standard is used in "cases involving fraud or some other quasi-criminal wrongdoing by the defendant" or when there is a statutory presumption involved. Addington, 441 U.S. at 424; Mark, 336 B.R. at

8

265 (clear and convincing evidence is used to overcome the statutory presumption of bad faith in Section 362(c)(3)(A)).[8] This heightened standard of proof necessitates a showing of high probability or reasonable certainty, but it does not mean clear and unequivocal. Kent K. v. Bobby M., 110 P.3d 1013, 1018-19 (Az. 2005); Judicial Inquiry and Review Com'n of Virginia v. Peatross, 611 S.E.2d 392, 400 (Va. 2005). However, it does place a heavier burden upon one party to prove its case to a reasonable certainty. Judicial Inquiry and Review Com'n, 611 S.E.2d at 400.

    This Court finds the proper standard to be the lower standard, preponderance of the evidence. While the Court recognizes that the "absolute right of the honest debtor" is an important consideration, it is not a liberty interest nor a statutory presumption. The Supreme Court's holding in Grogan guides this result. Grogan, 498 U.S. at 286 (holding Section 523(a) dischargability actions, including fraud, are decided by using a preponderance of the evidence standard). The issue involves a determination of what chapter of the Bankruptcy Code a debtor will use to pay and discharge her debts, not whether she is eligible to file bankruptcy at all. The lower standard must be used to determine whether the debtor meets the definition of a debtor under Chapter 13.

**E. The Bad Faith Conduct of the Debtor**

    A Chapter 7 debtor may forfeit his right to convert to Chapter 13 by engaging in

---

[8]A clear and convincing standard is also used when proving moral turpitude or when a clear liberty interest is at stake, such as commitment for mental illness, deportation, or denaturalization. See Woodby v. INS, 385 U.S. 276, 285 (1966)(deportation); Chaunt v. United States, 364 U.S. 350, 353 (1960)(denaturalization); Thompson v. Nicholson, 423 F. 3d 1279, 1283 (Fed. Cir. 2005)(liberty interest); Vogel v. American Warranty Home Service Corp., 695 F.2d 877, 882 (5th Cir. 1983)(fraud); U.S. v. Fatico, 458 F. Supp. 388, 404 (E.D.N.Y. 1978) (moral turpitude).

prepetition bad faith conduct that establishes "cause" warranting dismissal or reconversion of his Chapter 13 case, rendering him unqualified to be a debtor under Chapter 13. Marrama, 127 S. Ct. at 1110-1111. In Marrama, the debtor misrepresented the value of real property on his petition and failed to disclose that he had transferred his property during the preceding year. Id. at 1107. When the Chapter 7 trustee sought recovery of the property, the debtor moved to convert the case to Chapter 13, and the trustee objected. Id. Other courts, following Marrama, have not allowed conversion from Chapter 7 to Chapter 13 where debtors made prepetition fraudulent transfers, improperly represented their financial situation on their schedules, and moved to convert their case due to the litigation filed by the trustee. See In re Piccoli, No. 06-2142, slip op. at 4-8 (E.D. Pa. Sept. 27, 2007)(2007 WL 2822001)(district court affirmed bankruptcy court, which denied on bad faith grounds the debtor's motion to convert because the debtor conveyed real property to his daughter and son-in-law 16 months before filing and his amended schedules); In re Truong, No. 03-40283, slip op. at 3-4 (Bankr. D.N.J. Mar. 5, 2007)(2007 WL 708874)(court denied debtors' motion to convert because they transferred property to family members and corporate entities to protect it from the trustee and creditors, made inconsistent explanations of assets and liabilities, and filed the motion only after the trustee moved to remove them from their residence).

   Was there "bad faith conduct" by the Debtor sufficient to establish "cause" warranting dismissal or reconversion of her case? After reviewing the testimony and evidence, the Court finds that (a) the undisclosed transfer of real property to the Debtor's brothers 54 days before filing and (b) the misrepresentations on her schedules and at her Section 341 meeting evidence

the Debtor's bad faith by a preponderance of the evidence.[9]

The Debtor gave two explanations for the transfer of the Property to her brothers, but they cannot both be true. The Debtor testified that she transferred the Property to herself and her brothers as an asset protection planning move, so that any potential medical malpractice creditors of the Debtor would not be able to reach the Property to satisfy their claims. Then the Debtor and her brothers testified that it was a family tradition that all real property be owned jointly by all of the family. They described how this family tradition started with their grandparents and was carried on today. Each bother testified that their houses were jointly owned with family members. The brothers testified that this was the reason that the Property was transferred to them. As these two reasons are independent of one other, they both cannot be the reason for the transfer. Some aspect of the Debtor's testimony is not truthful.

Most importantly, the transfer of the Property was not reported on the Debtor's petition, on her Statement of Financial Affairs, or at her Section 341 meeting. Question 10 in her Statement of Financial Affairs required the Debtor to disclose, under oath, any transfers that she made within two years of the filing of the case. The Debtor's answer to this question indicated

---

[9]Although this decision does rely upon the following facts, the Court notes that the Debtor's bankruptcy appears to be timed precisely to avoid paying her creditors. If the testimony at the hearing is to be believed, the Debtor did not need to file for Chapter 7 relief. Both of the Debtor's brothers testified that, because the Debtor was out of work for several months, they gave her money to pay the mortgage on the Property and her other expenses. Thus, there was no financial reason for the Debtor to file bankruptcy when she did. At the time of filing, the Debtor was a registered nurse and had completed all of the course work to become a family nurse practitioner; she only needed to pass a test in order to obtain her new position with a corresponding increase in income. She filed her bankruptcy, then took the test and passed, which increased her net income by $964.00 per month. Had the Debtor taken the test and obtained her new position first, a presumption of abuse would have arisen under Section 707 of the Bankruptcy Code, which would have required her to file a Chapter 13 bankruptcy or have her case dismissed.

that no transfers had occurred. At the hearing, the Debtor testified that she did not realize this error when she reviewed and signed her schedules in the office of her first attorney, Farran. She testified that she looked at the petition, schedules, and Statement of Financial Affairs quickly and that she was under a great deal of stress.[10] At her Section 341 meeting, the Debtor denied that she had made any transfers within two years of her bankruptcy. Then, at the continued Section 341 meeting of creditors, when confronted with the deed showing the transfer of the Property, the Debtor testified that she "forgot" to disclose to the Trustee and her first attorney (Farran) that she had transferred the Property. Such testimony undercuts the Debtor's previous excuse of asset protection planning, as discussed above. If she transferred the Property to protect it, would that transfer not be memorable?

     Finally, the Debtor's demeanor and testimony at the hearing undercut her assertion that

---

[10]That the Debtor read the petition and attachments quickly is no excuse for material and inaccurate statements on these documents. Bankruptcy relies heavily on self-reporting by debtors. A debtor's signature avowing to the truth and correctness of the bankruptcy petition, schedules of assets and liabilities, and statement of financial affairs is undertaken on penalty of perjury. 28 U.S.C. § 1746; Fed. R. Bankr. P. 1008. Truth in reporting is consonant with the purposes of bankruptcy, which is to "give[] the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). Debtors that purposefully misrepresent the value of their existing assets are not seeking a "fresh start;" rather, such debtors are seeking a "head start," an act that is not countenanced by the Bankruptcy Code and which may be punishable as a felony. 18 U.S.C. § 157 ("A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so– . . . (3) makes a false or fraudulent representation . . . at any time before or after the filing of the petition . . . shall be fined under this title, imprisoned not more than 5 years, or both."). E.g., In re Jarrell, 189 B.R. 374, 377 (Bankr. M.D.N.C. 1995)(bankruptcy does not afford a debtor a right to a "head start"). Put plainly, a debtor must make every effort to ensure that the petition, schedules, and statements are as accurate as possible, and "[n]either the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987). The Court finds that the misrepresentations in the Debtor's schedules in this case are not innocent.

she acted in good faith.  During the hearing, the Trustee and the Bankruptcy Administrator subjected the Debtor to intense scrutiny and questioning.  The Debtor was calm and composed throughout this questioning, even when the Bankruptcy Administrator plainly questioned the Debtor's integrity.  The Debtor responded without emotion, which is not the normal response of a wrongly-accused person.  The Debtor's testimony was not consistent with a person who is nervous or confused under stress.  The Debtor also exhibited a highly selective memory.  During her testimony, she remembered details when it was to her advantage and could not remember material facts when it was not to her advantage.  The Debtor testified that stress caused her to forget about transferring the Property to her and her brothers less than two months before she filed her bankruptcy.  No evidence was presented to support the Debtor's assertions about her alleged medical condition.  In sum, her testimony was not persuasive.

The Court determines that, for the reasons stated above, the Trustee has carried his burden to show bad faith conduct by the Debtor, sufficient to warrant denying the Conversion Motion on the basis of Marrama.

## IV. CONCLUSION

The Debtor's prepetition and post-petition acts establish her bad faith conduct, rendering her unqualified to be a debtor under Chapter 13.  The Conversion Motion will be denied.

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM

IN RE:                                )
                                      )
VALARIE MAE GOINES,                   )      Case No. 07-50812
                                      )
                                      )
      Debtor.                         )
_____ )

CERTIFICATE OF SERVICE

Valarie Mae Goines

644 Nottinghill Drive
Winston-Salem, NC 27107-7679

A. Carl Penney
P. O. Box 21103
Winston-Salem, NC 27120-1103

Michael D West
Bankruptcy Administrator
P.O. Box 1828
Greensboro, NC 27402

Edwin H. Ferguson, Jr.

P. O. Box 444
Concord, NC 28025-0444